IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UPPER BAY SURGERY CENTER, LLC<br><br>  Plaintiff,<br><br>  v.<br><br>AETNA HEALTH AND LIFE<br>INSURANCE COMPANY,<br><br>  Defendant. | CASE NO. 1:15-cv-02992-JKB |

**MOTION FOR LIMITED DISCOVERY**

Pursuant to the Court's Order dated November 3, 2015, Upper Bay Surgery Center, LLC ("Upper Bay") files this Motion for Limited Discovery.  As will be explained further below, at this time Upper Bay seeks only the discovery of one number, which is called for by the Benefit Plan at issue in this case.  However, if Aetna Health and Life Insurance Company ("Aetna") argues either that it has the discretion to interpret the Benefit Plan or that the assignment being relied upon by Upper Bay is unenforceable, additional discovery will be required.

**RELEVANT BACKGROUND**

Upper Bay is an out-of-network provider with Aetna, meaning that Upper Bay does not have a contract with Aetna dictating the amount Upper Bay will accept as payment for treating patients with Aetna insurance.  On May 5, 2015, a patient (the "Patient") with an Aetna health insurance plan had a surgical procedure performed at Upper Bay.[1]  Upper Bay's charges for the procedure were $9,701, and Aetna set an allowable of $2,408.88, and ultimately paid that amount

---

[1] *See* Administrative Record at Aetna/UpperBay-000011 and note that all pages of the administrative record referenced in this Motion are attached as Exhibit 1 to this Motion.

to Upper Bay.[2]  This case was pursued due to Upper Bay's belief that Aetna's allowable and payment were insufficient under the Patient's Benefit Plan.

The Patient's Benefit Plan, which was produced as part of the Administrative Record, provides that:

> **Out-of-network providers** have not agreed to accept the **negotiated charge**.  Aetna will reimburse you for a **covered expense**, incurred from an **out-of-network provider**, up to the **recognized charge** and the maximum benefits under this Plan less any cost-sharing required by you such as **deductibles** and **payment percentage.**  The **recognized charge** is the maximum amount **Aetna** will pay for a **covered expense** from an **out-of-network provider**.[3]

In turn the Glossary of the Benefit Plan defines recognized charge:

> [T]he **recognized charge** for each service or supply is the lesser of:
> - What the provider bills or submits for that service or supply; and
> - For professional services and other services or supplies not mentioned below;
>   - the 90th percentile of the Prevailing Charge Rate; for the Geographic Area where the service is furnished.
>
> …
>
> As used above, Geographic Area and Prevailing Charge Rates are defined as follows:
> - Geographic Areas: This means an expense area grouping defined by the first three digits of the U.S. Postal Service zip code.
> - Prevailing Charge Rates: These are the rates reported by FAIR Health, a nonprofit company, in their database.  FAIR Health reviews and, if necessary, changes these rates periodically.  **Aetna** updates its systems with these changes within 180 days after receiving them from FAIR Health.[4]

Here, Aetna's "recognized charge" was not based upon Upper Bay's charges.  Therefore, based on the plain language of the Patient's Benefit Plan, it should have been based upon the "90th

---

[2] *Id.*
[3] *Id.* at Aetna/UpperBay-000053 (bolding in the original and the bolding identifies terms that are defined in the Glossary of the Patient's Benefit Plan).
[4] *Id.* at Aetna/UpperBay-000123-000124

2

percentile of the Prevailing Charge Rate" as kept in the Fair Health database.  However, based upon its many years of experience, Upper Bay is nearly certain that the allowable of $2,408.88 set by Aetna is less than the "90th Percentile of the Prevailing Charge Rate" called for by the Patient's Benefit Plan.  Upper Bay cannot speak with absolute certainty because Aetna failed to include the 90th Percentile of the Prevailing Charge Rate number in the Administrative Record that it provided in this case, and Aetna is the only party to this action with access to this number.  By this Motion, Upper Bay seeks discovery to determine the exact amount of the "90th Percentile of the Prevailing Charge Rate."

It is noteworthy that the Administrative Record appears to demonstrate Aetna did not base its payment upon the "90th Percentile of the Prevailing Charge Rate."  The Administrative Record references a policy whereby Aetna pays Maryland out-of-network (non-par) ambulatory surgery centers ("ASCs"), like Upper Bay, at 200% of Medicare.[5]  In separate litigation between Aetna and an out-of-network ASC, Aetna produced the 200% of Medicare Network Communication attached hereto as Exhibit 2 as its justification for only paying 200% of Medicare.  This Network Communication was not included as a part of the Administrative Record in this matter, but it appears to be in effect, nonetheless.

Importantly, the Patient's Benefit Plan sets forth the "Procedure for Amending the Plan" by providing that "[t]he Employer may amend the Plan from time to time by a written instrument signed by the Plan Administrator."[6]  The Employer is Amtrak (National Railroad Passenger Corporation) and Amtrak is also the Plan Administrator.[7]  The Administrative Record is devoid

---

[5] *Id.* at Aetna/UpperBay 000017-000018.
[6] *Id.* at Aetna-Upperbay-000129
[7]*Id.*

3

of any amendment which would allow Aetna to use 200% of Medicare as the recognized charge, rather than the "90th Percentile of the Prevailing Charge Rate" called for by the Benefit Plan.

Finally, the Benefit Plan in issue does not grant Aetna discretionary authority to determine eligibility for benefits or to construe the terms of the plan. As such, the Court's review in this matter should be *de novo.*

## ARGUMENT

**A. Upper Bay Should be Provided Information in regard to the 90th Percentile of the Prevailing Charge Rate."**

This is a case to determine whether the allowable and payment set and made by Aetna for the care the Patient received were sufficient and in accordance with the Patient's Benefit Plan. As explained above, the Benefit Plan called for an allowable based upon the lesser of Upper Bay's charges or the "90th Percentile of the Prevailing Charge Rate," yet the Administrative Record produced by Aetna lacks information in regard to the "90th Percentile of the Prevailing Charge Rate." Here, there is only one procedure that was performed and all Aetna would need to provide is the one number that is the "90th Percentile of the Prevailing Charge Rate." Upper Bay by this Motion requests the Court to either order Aetna to produce this number, or to allow Upper Bay discovery to determine this number.

This is less of a discovery request, than a request for Aetna to provide a complete and accurate Administrative Record. The Prevailing Charge Rate is information possessed solely by Aetna, and Upper Bay has a right to know this information which is critical to determine how Aetna should have processed Upper Bay's claim for the Patient. As the Court reviews this case *de novo* it is indisputable that the Court has the authority to either order Aetna to produce the missing 90th Percentile of the Prevailing Charge Rate number, or allow Upper Bay discovery to determine the number.

**B. Discovery which could become necessary due to the defenses raised by Aetna.**

While Upper Bay believes that the 90th percentile of the Prevailing Charge Rate number is all the discovery it needs at the moment, that could change based upon the defenses put forward by Aetna in this matter.

First, Aetna may attempt to argue that Upper Bay lacks standing to bring this suit, alleging that Patient's assignment to Upper Bay is invalid due to an anti-assignment clause in Patient's Plan. If Aetna makes such an argument, Upper Bay will seek to prove that Aetna has waived this clause of the Patient's plan, and will therefore want discovery in regard to Aetna's regular dealings with Upper Bay over a period of years, whether Aetna has ever asserted that Upper Bay's assignments were invalid, and how Aetna regularly addresses its anti-assignment provisions. Generally, Upper Bay would request Aetna to produce any correspondence from Aetna to Upper Bay making reference to anti-assignment provisions in the Aetna Benefit Plan which covered any patient with Aetna health insurance that received care at Upper Bay for a period of three years before May 5, 2015. Upper bay would also request Aetna to produce any correspondence from Aetna to any out-of-network health care provider making reference to anti-assignment provisions in the Aetna Benefit Plans which covered any patients that received care at those facilities for a period of three years before May 5, 2015. Finally, Upper Bay would request Aetna to produce any internal, non-privileged, communications regarding anti-assignment provisions, including employee training materials, sample documents, and templates, created or used in a period of three years before May 5, 2015.

Second, if Aetna claims that it has discretion to interpret the Patient's Benefit Plan, and it produces a document demonstrating as much, Upper Bay will need discovery related to whether Aetna abused its discretion. In particular, Upper Bay will need discovery in regard to eight non-

exclusive factors identified in *Booth v. Wal-Mart Stores, Inc.*, 201 F. 3d 335, 342-43 (4th Cir. 2000); *see* also *Helton v. AT&T, Inc.*, 709 F. 3d 343, 356 (4th Cir. 2013) (holding that "a district court may consider evidence outside of the administrative record on abuse of discretion of review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors and the evidence was known to the administrator when it rendered its benefits determination.").

Third and finally, if Aetna claims that its 200% payment was appropriate, Upper Bay will need discovery in regard to any such claim, and Aetna's justification for that claim.

## CONCLUSION

For the reasons set forth above, Upper Bay Surgery Center believes that the only additional discovery it needs currently is the number which represents the 90th Percentile of the Prevailing Charge Rate for the procedure performed by Upper Bay. However, Upper Bay reserves the right to request additional discovery based upon the defenses put forward by Aetna.

Respectfully submitted,

    /s/
Ian I. Friedman (Bar No. 17288)
8229 Carrbridge Circle
Towson, MD 21204
P: 443-415-5601
ifriedman@surgcenter.com

*Attorney for Plaintiff, Upper Bay Surgery Center, LLC*

Date: February 5, 2016

## **CERTIFICATE OF SERVICE**

I, Ian I. Friedman, hereby certify that the foregoing Motion for Limited Discovery was served via CM/ECF upon the following:

>Jesse D. Stein, Esq. (Bar No. 17663)
>Ian G. Thomas, Esq. (Bar No. 03883)
>Brown & Gould, LLP
>7316 Wisconsin Avenue, Suite 200
>Bethesda, MD 20814
>P: 301-718-4548
>jstein@brownandgould.com
>ithomas@brownandgould.com
>
>*Attorneys for Defendant, Aetna Health and Life Insurance Company*

/s/
Ian I. Friedman

Date:  February 5, 2016