IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UPPER BAY SURGERY CENTER, LLC, | : | |
| | : | |
| Plaintiff, | : | Civil No. 15-2992-JKB |
| | : | |
| v. | : | |
| | : | |
| AETNA HEALTH AND LIFE INS. COMPANY, | : | |
| | : | |
| Defendant. | : | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LIMITED DISCOVERY**

**I.   INTRODUCTION**

This action involves an appeal of an ERISA benefit determination, made by Aetna[1] as the claim fiduciary. Aetna applied its expressly delegated duty under the written terms of a self-funded Plan to calculate the covered amount payable to Plaintiff Upper Bay Surgery Center LLC ("Upper Bay") as an alleged assignee of a Plan member. Simply put, Upper Bay wants more payment than the plan permits and has already been paid. At issue is a dispute over approximately $7,000.

As the Supreme Court has explained, ERISA's civil enforcement scheme "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). The statute embodies "a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (citing *Curtiss-Wright Corp*

---

[1] Aetna Health and Life Insurance Company (hereinafter "Aetna").

*v. Schoonejongen*, 514 U.S. 73, 83 (1995). Consistent with this scheme, and where, as here, a fiduciary is vested with discretionary authority, the courts are generally limited to consideration of the administrative record, and should not consider evidence outside that record. *Helton v. AT&T*, 709 F.3d 343, 352 (4th Cir. 2013) ("promoting internal resolution of claims furthers ERISA's goals of expeditiously, efficiently, and inexpensively resolving coverage disputes"). This limitation must further be viewed through the lens of the scope of review: the ultimate question in this case is not whether the Court agrees with Aetna's determination, but whether Aetna abused its discretion. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 344 (4th Cir. 2000).

Upper Bay nonetheless seeks expansive and overbroad discovery in this matter. In doing so, it misquotes the express Plan language to argue for discovery which is disproportionate, inapplicable and irrelevant to the narrow claim at issue in this case. By its very scope, Upper Bay demonstrates that its request is not designed to facilitate the fair, just and speedy resolution of a simple ERISA claim benefit determination, but rather is designed to fathom the depths for information other than that which is relevant to the issue before the Court under the terms of the controlling Plan.[2]

---

[2] It is noteworthy that Upper Bay here is represented by SurgCenter Development, who, as a business, manages surgery centers and negotiates and sets rates for providers throughout Maryland. *See* http://www.surgcenter.com/home/overview/. The information which Upper Bay seeks in this discovery request – discovery regarding proprietary, licensed database information regarding prevailing rates in the geographic area; discovery regarding Aetna's administration of other claims; and discovery regarding the "appropriateness" of Aetna's reimbursement policy – is all proprietary information which is of competitive value to SurgCenter in its representation of surgery centers throughout the state and country (indeed, Upper Bay is not the only SurgCenter facility that is currently involved in litigation with Aetna, *see* Civil No. 15-2823-GJH and consolidated cases). Aetna's serious concerns regarding the release of this proprietary information to SurgCenter cannot be assuaged through a confidentiality agreement, as the entity representing Upper Bay here is the very entity representing surgery centers in negotiating rates and managing other providers. The competitive value of this information may further explain the extraordinary breadth and scope of Upper Bay's discovery interests, and further demonstrates why their requests are impermissible.

Upper Bay seeks discovery regarding four topics: claim payment data relating to the "recognized charge" permitted under the Plan; Aetna's history of enforcing the anti-assignment provision of the Plan; discovery under the *Booth* factors, and discovery regarding the appropriateness of Aetna's payment policy. None of these requests, however, are warranted.

In its first request for discovery relating to the "recognized charge" under the terms of the Plan, Upper Bay purports to quote the definition of "recognized charge" in its brief, but through the troubling use of substantially misleading ellipses, it omits the very controlling terms which demonstrate that its request for discovery is unwarranted. The actual, controlling text of the Plan makes clear that Aetna is empowered to reduce the recognized charge allowable for a covered benefit by applying its Reimbursement Policies; Upper Bay concedes that it has the relevant Reimbursement Policy. Accordingly, no discovery regarding this issue is warranted.

Upper Bay next seeks discovery regarding the Plan's anti-assignment clause, "if" Aetna intends to assert the defense. Aetna has asserted that clause as an affirmative defense. However, no additional discovery is permitted in connection with this defense, as the question of whether Aetna has waived the defense is confined to its conduct with respect to the claim at issue. This question can be answered by the contents of the administrative record, which has been produced; the limitless discovery Upper Bay seeks is not warranted.

Next, Upper Bay asserts it requires discovery regarding the *Booth* factors if Aetna is vested with discretionary authority under the terms of the Plan. The Plan does expressly confer discretionary claims authority on Aetna. Aetna has requested that Plaintiff execute a confidentiality agreement so that the document establishing Aetna's discretionary authority can be produced; in the interim, the relevant portion of the document is excerpted herein. However, Aetna's discretionary authority and the self-funded nature of the Plan counsel *against* discovery,

and Upper Bay has wholly failed to articulate how any of the *Booth* factors warrant or require discovery, and its request should be denied.

Lastly, Upper Bay seeks discovery regarding Aetna's justification for the "appropriateness" of its payment. However, this again is addressed by the terms of the Plan and the administrative record. As noted above, the Plan permits Aetna to reduce the recognized charge by applying Aetna's Reimbursement Policies, and the policy at issue in this case has already been provided to Upper Bay. Accordingly, no further discovery regarding the "appropriateness" of Aetna's payment, under the terms of the Plan and its applicable policy, is needed.

## II.  FACTUAL BACKGROUND

As conceded by Upper Bay in its motion, its claims in this ERISA-governed matter are controlled by the terms of the Plan, which is a self-funded plan administered by Aetna. The Plan's "Booklet-Certificate" provides that for services provided by "out of network providers," including Upper Bay, Aetna will reimburse members "for a covered expense, incurred from an out-of-network provider, up to the recognized charge and the maximum benefits under this Plan less any cost-sharing required by you such as deductibles and payment percentage." (Dkt. No. 19 at Ex. 1). "The recognized charge is the maximum amount that Aetna will pay for a covered expense from an out-of-network provider." (*Id*).

"Recognized charge," in turn, is defined as follows:

> [T]he **recognized charge** for each service or supply is the lesser of:
>
> - What the provider bills or submits for that service or supply; and
> - For professional services and other services or supplies not mentioned below;
> - the $90_{th}$ percentile of the Prevailing Charge Rate; for the Geographic Area where the service is furnished.

4

> If Aetna has an agreement with a provider (directly, or indirectly through a third party) which sets the rate that Aetna will pay for a service or supply, then the recognized charge is the rate established in such agreement.
>
> **Aetna may also reduce the recognized charge by applying Aetna Reimbursement Policies.** Aetna Reimbursement Policies address the appropriate billing of services, taking into account factors that are relevant to the cost of the service, such as… [factors omitted].
>
> Aetna's Reimbursement Policies are based on Aetna's review of: **the policies developed for Medicare**; the generally accepted standards of medical and dental practice, which are based on credible scientific evidence published in peer-reviewed literature generally recognized by the relevant medical or dental community or which is otherwise consistent with physician or dental specialty society recommendations; and the views of physicians and dentists practicing in the relevant clinical areas. Aetna uses a commercial software package to administer some of these policies.

(*Id.*(emphasis supplied)).

Again, troublingly, Upper Bay omitted to disclose in its motion this key provision permitting Aetna to reduce the recognized charge by applying its Reimbursement Policies.[3] Upper Bay admits, however, that it has received the policy which was applied to the claim at issue, and even attached that policy to its motion. (Dkt. No. 19 at Ex. 2). That policy provides that, starting February 1, 2015, Aetna would reimburse freestanding ambulatory surgery centers in Maryland that are not participating providers in Aetna's network at the rate of 200% of Medicare. (*Id*). That was exactly how Upper Bay was reimbursed in this case.

The Plan is further governed by the Master Services Agreement ("MSA") between Aetna and Amtrak, the plan sponsor. This Master Services Agreement has not yet been produced to

---

[3] Upper Bay's omission is even more troubling when one considers that Upper Bay's letter to the Court regarding its discovery requests *acknowledged* the recognized charge would be determined by "database information **or reimbursement policies Aetna relied upon**." (Dkt. No. 14 at 1) (emphasis supplied).

Upper Bay, as the parties have not yet finalized a confidentiality agreement, but it will be provided once an agreement is executed and approved by the Court. With regard to fiduciary duties and claim fiduciary responsibilities, the MSA provides:

> It is understood and agreed that the Customer [Amtrak], as Plan Administrator, retains complete authority and responsibility for the Plan, its operation, and the benefits provided there under, and that Aetna is empowered to act on behalf of Customer in connection with the Plan only to the extent expressly stated in the Services Agreement or as agreed to in writing by Aetna and Customer. Customer has the sole and complete authority to determine eligibility of persons to participate in the Plan. Claim fiduciary responsibility is identified in the applicable Statement of Available Services ("SAS").

The SAS, in turn, provides:

> Customer and Aetna agree that with respect to Section 503 of the Employee Retirement Income Security Act of 1974, as amended, **Aetna will be the "appropriate named fiduciary" of the Plan for the purpose of reviewing denied claims under the Plan.** Customer understands that the performance of fiduciary duties under ERISA necessarily involves the exercise of discretion on Aetna's part in the determination and evaluation of facts and evidence presented in support of any claim or appeal. Therefore, and to the extent not already implied as a matter of law, **Customer hereby delegates to Aetna discretionary authority to determine entitlement to benefits under the applicable Plan Documents for each claim received, including discretionary authority to determine and evaluate facts and evidence, and discretionary authority to construe the terms of the Plan.** It is also agreed that, as between Customer and Aetna, Aetna's decision on any claim is final and that Aetna has no other fiduciary responsibility. [emphasis supplied].

The Plan thus grants to Aetna discretionary authority to review and determine all claims, and to construe the terms of the Plan.

### III. LEGAL ARGUMENT

    **A. Upper Bay Is Not Entitled to Discovery Regarding the "Prevailing Charge Rate," as Upper Bay Has Already Received All Information Regarding the Recognized Charge**

Upper Bay seeks extraordinary discovery regarding the "prevailing charge rate," derived from Upper Bay's egregious omission of key terms of the Plan from its motion. Upper Bay premises its request for discovery on its claim that the recognized charge is *only* defined as the 90th percentile of the "Prevailing Charge Rate for the Geographic Area where the service is furnished." An examination of the controlling plain terms of the Plan, however, demonstrates that the definition is not as limited as Upper Bay would argue. Rather, the definition of "recognized charge" – the reimbursement which a beneficiary is entitled to receive under the Plan for charges from an out of network provider – provides that Aetna may *reduce* the "recognized charge" by applying "Aetna Reimbursement Policies."

Upper Bay concedes that just such a policy was applied *in this case* to determine the recognized charge for the claim at issue. Upper Bay further admits that the administrative record indicates that claims at issue were reimbursed pursuant to this policy at a rate of 200% of Medicare. (Dkt No. 19 at p.3 and Ex. 1 at p.3). Upper Bay even goes so far as to attach that very policy to its Motion, acknowledging that it has received the policy that was applied by Aetna to determine the recognized charge in this matter. (Dkt. No. 19 at Ex. 2).

Accordingly, there is no need for discovery regarding the "prevailing charge rate," and, more particularly, regarding the rates as reported by FAIR Health, as the recognized charge here was determined by Aetna's Reimbursement Policies, pursuant to the express terms of the Plan. No further discovery is needed beyond the contents of the administrative record and the policy, both of which Upper Bay concedes it has received.

### B. Upper Bay Is Not Entitled to Discovery Regarding the Anti-Assignment Provision of the Plan

Upper Bay next asserts that it needs discovery regarding the anti-assignment provision of the Plan, so that it *may* demonstrate that Aetna has waived the provision through its past conduct.

As alluded to by Upper Bay, the controlling specific Plan contains an anti-assignment provision, which provides, "Coverage and your rights under this plan may not be assigned. A direction to pay a provider is not an assignment of any right under this plan or of any legal or equitable right to institute any court proceeding." *See* Exhibit 1 hereto.

Upper Bay asserts that it is entitled to conduct discovery regarding Aetna's waiver of this clause through its conduct in connection with *other* claims. Such information, however, is not relevant to the issue of waiver or whether Aetna is estopped from asserting the anti-assignment clause of this Plan to bar Upper Bay's claims *in this case*. The question of whether an ERISA fiduciary is estopped from asserting an anti-assignment clause in a plan, or otherwise challenging the enforceability of a purported assignment, turns on the conduct of the fiduciary ***with respect to the claim at issue***. *See Total Renal Care of N.C., LLC v. Fresh Mkt. Inc.*, 2008 U.S. Dist. LEXIS 18889, *14-17 (M.D. N.C. March 6, 2008); *Cleveland Clinic Found. v. Welding Inc. Emple. Ben. Plan*, 2006 U.S. Dist. LEXIS 58383, *11 (S.D. W.V. Aug. 18, 2006) (citing *Hermann Hosp. v. MEBA Medical and Benef. Plan*, 959 F.2d 569, 574 (5th Cir. 1992)). That is, in considering assertions of waiver or estoppel, courts look to the fiduciary's conduct during the administration of the claim, not its conduct with respect to other, unrelated claims. *Id*. The question of waiver or estoppel can thus be answered from an examination of the administrative record *for the claim at issue in this case*, and does not require discovery outside of the administrative record.[4] Upper Bay has failed to demonstrate how any discovery beyond the administrative record would be relevant

---

[4] Such discovery would further be disproportionate to the claim at issue in this case, under Federal Rule of Civil Procedure 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, **the amount in controversy**, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") (emphasis supplied).

to this Court's application of the anti-assignment provision, and accordingly its request should be denied.

### C. Aetna's Discretionary Authority Precludes Further Discovery

Upper Bay asserts that, to the extent Aetna has discretion under the terms of the Plan, it "will need" discovery relating to whether Aetna abused its discretion. Upper Bay, however, overstates its "entitlement" to discovery, and moreover, it has failed to specify what discovery it is requesting, let alone demonstrate why such discovery is necessary.

Aetna has been vested with discretionary authority under the Plan. As noted above, Aetna has been vested with the discretion to "determine entitlement to benefits" under the Plan, and to "construe the terms of the Plan." This discretion precludes Upper Bay from obtaining additional discovery beyond the administrative record.

"Generally, consideration of evidence outside of the administrative record is inappropriate when a coverage determination is reviewed for abuse of discretion." *Helton v. AT&T*, 709 F.3d 343 (4th Cir. 2013). Discovery is not automatically warranted under *Helton v. AT&T, Inc.*; rather, courts must assess whether discover is *necessary* in order for the Court to perform an analysis under the *Booth* factors. *See Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 531-32 (D. Md. 2011) (Bredar, J.); *Lockard*, 2015 U.S. Dist. LEXIS 104675, *10-11. If the administrative record contains sufficient information, no discovery should be permitted because information beyond the record would "not be relevant." *Anderson v. Reliance Std. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 1244, *7 (D. Md. Jan. 5, 2012) (citation omitted). Where, as here, there is no structural conflict, because the plan is self-funded and administered by a third party,[5] the only discovery

---

[5] There is no structural conflict in this case – claims are administered by Aetna, but paid by the plan, which is self-funded. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (identifying the "conflict of interest" to be assessed in ERISA cases as that which arises when a

related to conflict of interest to which a plaintiff may be entitled is the services agreement between the plan and administrator, which Aetna has already agreed to produce subject to an agreeable confidentiality order, and with the specific compensation terms (i.e., the dollar amounts) redacted. *Boyd v. Sysco Corp.*, 2014 U.S. Dist. LEXIS 90802, *8-11 (D. S.C. July 3, 2014).

The case of *Boyd* is instructive. There, the court, in considering a self-funded plan administered by a third party, permitted discovery of the administrative services contract, the production of the entire administrative record, the plan document, and the claims management guidelines relied on in making the benefit determination (or "which constituted a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis"). The court denied the request for discovery regarding facts behind other health claims where no showing was made regarding why such discovery was needed. *Id*.

Here, Upper Bay has not even provided a cogent reason relating to this claim regarding what discovery it seeks as part of its claimed need to evaluate the *Booth* factors, let alone why that discovery is necessary. Absent such a showing, discovery is properly limited to the administrative record and plan documents produced by Aetna.

**D. Upper Bay Is Not Entitled to Discovery Regarding the 200% of Medicare Payment**

Lastly, Upper Bay asserts that "if Aetna claims its 200% payment was appropriate," it "need[s]" discovery regarding Aetna's justification for that claim. This assertion, however, is nonsensical in light of the terms of the Plan and Aetna's Reimbursement Policy applied in this

---

benefit plan's administrator "both evaluates claims and pays benefits claims"); *Lockard v. Unum Life Ins. Co. of Am.*, 2015 U.S. Dist. LEXIS 104675, *5-6 (N.D. W.V. Aug. 10, 2015) ("the *Glenn* exception allows for additional discovery outside of the administrative record when an administrator has a structural conflict of interest and information not contained in the record is necessary to enable the court to determine the likelihood that the conflict influenced the particular benefits decision at issue.") (internal citation omitted).

matter. The terms of the Plan specifically permit Aetna to apply its Reimbursement Policies to reduce the recognized charge. The administrative record indicates Aetna applied just such a reimbursement policy, and Upper Bay acknowledges it has received that policy, and even attached it to its motion. That policy, in turn, limits reimbursement of non-participating ambulatory surgical centers in Maryland to 200% of Medicare.

The question presented in this case is whether the administrator – Aetna – acted within the scope of its discretion, not whether its determination is "appropriate" in the opinion of other parties. *Booth*, 201 F.3d at 344 ("Because the administrator was given discretion to make the decisions under review in this case and acted within the scope of this discretion, we will not disturb the administrator's decision if it is reasonable, even if we independently would have come to a different conclusion… Where a plan administrator has offered a reasonable interpretation of disputed provisions, we may not replace it with an interpretation of our own.") (citing *Firestone*, 489 U.S. at 115). No further discovery regarding Aetna's basis for its payment, under the exercise of its fiduciary discretion in a claim determination under the terms of this Plan, is needed or permissible.

## IV.   CONCLUSION

For all the foregoing reasons, Aetna respectfully requests this Court deny Plaintiff's Motion in its entirety. No discovery in this matter is warranted; the record is properly limited to the Plan documents and administrative record, which Aetna has already produced and/or has agreed to produce upon the execution of a confidentiality agreement.

|  | Respectfully submitted, |
|---|---|
| OF COUNSEL: | */s/ Jesse D. Stein*_____<br>JESSE D. STEIN, # 17663<br>BROWN & GOULD, LLP<br>7316 Wisconsin Ave., Ste 200<br>Bethesda, MD 20814 |
|  | JAMES C. CRUMLISH, III (*pro hac vice pending*)<br>AIMEE L. KUMER (*pro hac vice pending*)<br>925 Harvest Drive, Suite 300<br>Blue Bell PA 19422 |

Dated: February 19, 2016

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via the court's electronic filing system upon all counsel of record.

Dated: February 19, 2016                               */s/ Jesse D. Stein*
                                                       Jesse D. Stein