## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| | * | |
| UPPER BAY SURGERY CENTER, LLC, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO.  JKB-15-2992 |
| AETNA HEALTH & LIFE INS. CO., | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM  AND  ORDER

Pending before the Court is Plaintiff's motion for limited discovery (ECF No. 19), which has been briefed (ECF Nos. 23 and 33).  Also pending is Defendant's motion for leave to file surreply (ECF No. 37), to which Plaintiff has responded (ECF No. 40).  No hearing is necessary.  Local Rule 105.6 (D. Md. 2014).  The motions will be denied.

Originally filed in the District Court of Maryland for Cecil County, this case was removed to this Court because the claim is acknowledged by the parties as arising under certain provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1331 and 1367.  (Am. Compl., ECF No. 32; Notice of Removal, ECF No. 1.)  Plaintiff, Upper Bay Surgery Center, LLC ("Upper Bay"), is a health care service provider who has sued Defendant Aetna Health and Life Insurance Company ("Aetna") for underpayment of a claim made on behalf of an individual who received services from Upper Bay on May 5, 2015.  (Am. Compl. ¶ 15.)

Upper Bay submitted a charge of $9,701.00, Aetna set an allowable charge of $2,408.88, and Aetna paid Upper Bay $2,288.44.  (*Id.* ¶16.)  Upper Bay contends it was entitled to receive ninety percent of the Prevailing Charge Rate for the geographic area; the Prevailing Charge Rate

is derived from rates reported by the FAIR Health database. (*Id.* ¶¶ 19, 22.) Instead, Aetna paid Upper Bay in an amount that corresponded to 200% of the Medicare reimbursement rate for ambulatory surgical centers. (*Id.* ¶ 22.) Upper Bay contends Aetna's reimbursement breached the terms of the patient's health insurance plan. (*Id.* ¶ 28.) Upper Bay seeks what it alleges is the proper reimbursement amount, costs, and fees, as well as a declaration and an injunction, applicable to the patient at issue and all future patients with Aetna-administered health insurance, that Aetna must reimburse in accordance with Upper Bay's interpretation of the plan; Upper Bay also seeks a statutory penalty for Aetna's alleged failure to provide Upper Bay with the documents on which Aetna's reimbursement decision was based. (*Id.* ¶¶ 29, 32, 37-39.)

Aetna has generally denied Upper Bay's allegations of impropriety in setting the reimbursement amount and has asserted various defenses to bar any recovery. (Ans., ECF No. 35.) Following Upper Bay's receipt from Aetna of the administrative record, Upper Bay filed the instant motion for limited discovery (ECF No. 19), which is now ripe for decision.

In an ERISA case that involves a request for judicial review of the denial of insurance benefits, such review is ordinarily confined to the administrative record, and extrinsic discovery is only permitted in exceptional circumstances. *Quesinberry v. Life Ins. Co. of No. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993). *See also Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999), *cited in Donnell v. Metro. Life Ins. Co.*, 165 F. App'x 288, 297 (4th Cir. 2006) (unpublished). Upper Bay has failed to establish exceptional circumstances justifying extrinsic discovery here.

Upper Bay contends that, at the present time, it only seeks the discovery of one number—the Prevailing Charge Rate in effect at the time of service rendered to the patient. However, Upper Bay indicates that if Aetna argues it has discretion to interpret the patient's

benefit plan or that the assignment being relied upon by Upper Bay is unenforceable, then it will

require additional discovery.  In the latter instance, Upper Bay wants discovery

> in regard to Aetna's regular dealings with Upper Bay over a period of years, whether Aetna has ever asserted that Upper Bay's assignments were invalid, and how Aetna regularly addresses its anti-assignment provisions.  Generally, Upper Bay would request Aetna to produce any correspondence from Aetna to Upper Bay making reference to anti-assignment provisions in the Aetna Benefit Plan which covered any patient with Aetna health insurance that received care at Upper Bay for a period of three years before May 5, 2015.  Upper bay would also request Aetna to produce any correspondence from Aetna to any out-of-network health care provider making reference to anti-assignment provisions in the Aetna Benefit Plans which covered any patients that received care at those facilities for a period of three years before May 5, 2015.  Finally, Upper Bay would request Aetna to produce any internal, nonprivileged, communications regarding anti-assignment provisions, including employee training materials, sample documents, and templates, created or used in a period of three years before May 5, 2015.

(Pl.'s Mot. 5, ECF No. 19.)

In the former instance, pertaining to discretion to interpret the benefit plan, Upper Bay

says it "will need discovery in regard to eight non-exclusive factors identified in *Booth v. Wal-*

*Mart Stores, Inc.*, 201 F.3d 335, 342-43 (4th Cir. 2000)."  (Pl.'s Mot. 5-6.)  Third, "if Aetna

claims that its 200% payment was appropriate, Upper Bay will need discovery in regard to any

such claim, and Aetna's justification for that claim." (*Id.* 6.)

The language of the plan documents obviates any claimed need for discovery by Upper

Bay.  Under the plan, a claimed

> **covered expense** is only that part of a charge which is the **recognized charge**.

> As to medical, vision and hearing expenses, the **recognized charge** for each service or supply is the lesser of:
> • What the provider bills or submits for that service or supply; and
> • For professional services and other services or supplies not mentioned below:
>    the 90th percentile of the Prevailing Charge Rate;
>    for the Geographic Area where the service is furnished.

If **Aetna** has an agreement with a provider (directly, or indirectly through a third party) which sets the rate that **Aetna** will pay for a service or supply, then the **recognized charge** is the rate established in such agreement.

**Aetna** may also reduce the **recognized charge** by applying **Aetna** Reimbursement Policies. **Aetna** Reimbursement Policies address the appropriate billing of services, taking into account factors that are relevant to the cost of the service such as:
- the duration and complexity of a service;
- whether multiple procedures are billed at the same time, but no additional overhead is required;
- whether an assistant surgeon is involved and necessary for the service;
- if follow up care is included;
- whether there are any other characteristics that may modify or make a particular service unique; and
- when a charge includes more than one claim line, whether any services described by a claim line are part of or incidental to the primary service provided.

**Aetna** Reimbursement Policies are based on **Aetna's** review of: the policies developed for Medicare; the generally accepted standards of medical and dental practice, which are based on credible scientific evidence published in peer-reviewed literature generally recognized by the relevant medical or dental community or which is otherwise consistent with **physician** or dental specialty society recommendations; and the views of **physicians** and dentists practicing in the relevant clinical areas. **Aetna** uses a commercial software package to administer some of these policies.

(Pl.'s Reply, Ex. 4, Aetna/UpperBay-000123.)

Thus, the plan clearly states that, although the recognized charge may be calculated as ninety percent of the Prevailing Charge Rate, "Aetna may also reduce the recognized charge by applying Aetna Reimbursement Policies." (*Id.*) Consistent with that authority, Aetna announced in a Network Communication dated February 16, 2015, "Starting February 1, 2015, we'll pay at a rate of 200% of Medicare for . . . [f]reestanding Ambulatory Surgery Centers (ASCs) in Maryland that aren't part of our network for commercial products." (Pl.'s Mot. Ex. 2, ECF No. 19-2.) And consistent with that announcement, the administrative record shows that Aetna

set the reimbursement amount of the claim in the instant case at 200% of Medicare.  (*Id.* Ex. 1, Aetna/UpperBay-000017, Aetna/UpperBay-000018.)

Consequently, it matters not what the Prevailing Charge Rate was at the time Upper Bay's patient received surgical services.  Aetna was empowered to reduce the recognized charge according to Aetna's Reimbursement Policies, and Upper Bay has been informed as to the particular policy governing the outcome of its patient's claim.  This case rises and falls upon the terms of the benefit plan and upon whether those terms were properly applied.  As a result, no extrinsic evidence is needed to resolve the case.

Upper Bay makes an alternative argument that if Aetna asserts Upper Bay lacks standing to bring this suit because of an anti-assignment clause in the subject benefit plan, then it is entitled to considerable discovery from Aetna that would help Upper Bay prove that, over the years, Aetna's dealings with Upper Bay show Aetna has waived this clause.  Upper Bay's assertion is not logical.  First, whatever dealings have occurred over the years between the parties are likely to be reflected in the records of both parties, and Upper Bay can consult its own records in that regard.  Second, Upper Bay's request obviously covers other patient benefit plans, and since it cannot be supposed that the wording of the subject benefit plan is identical to other benefit plans, Upper Bay has not made even a colorable showing that discovery as to how Aetna dealt with Upper Bay regarding other claims made under other benefit plans has any relevance to the case at hand.

Upper Bay additionally argues it is entitled to discovery related to whether Aetna abused its discretion, but has failed to explain how extrinsic evidence *in this case* could assist the Court in evaluating it.  Upper Bay takes issue with a policy that Aetna readily acknowledges it applied, and Upper Bay has made no plausible factual allegation that Aetna relied upon anything other

than that policy to make its decision on the amount of the claim reimbursement.  As a result, no discovery is warranted on this basis.

Finally, Upper Bay makes a one-sentence argument that "if Aetna claims that its 200% payment was appropriate, Upper Bay will need discovery in regard to any such claim, and Aetna's justification for that claim." (Pl.'s Mot. 6.)  It would be inappropriate for this Court to question the reasons behind Aetna's policy of paying 200% of Medicare to ambulatory surgical centers in Maryland.  It is up to the Plan Administrator, Amtrak, to decide whether Aetna's reimbursement policies are appropriate.  Discovery is of no value in deciding this argument.

In conclusion, Upper Bay fails to justify its request for discovery of matters extrinsic to the administrative record.  Accordingly, its motion for limited discovery (ECF No. 19) IS DENIED.  The Court finds no reason to consider Aetna's proffered surreply, and therefore, its motion for leave to file a surreply (ECF No. 37) IS DENIED.  The Clerk SHALL TERMINATE ECF No. 34.

SO ORDERED.

DATED this 19th day of May, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge